**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ALYSSA L. OGDEN,

       Plaintiff,

v.                                                                    CASE NO: 8:08-cv-1187-T-26TBM

HILLSBOROUGH COUNTY, FLORIDA,
and KEVIN WHITE,

       Defendants.

_____/


**<u>AMENDED ORDER</u>**

       Pending before the Court is Defendant Hillsborough County's (the County)

motion and memorandum in support of the entry of a judgment as a matter of law

pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.[1]  Plaintiff Alyssa Ogden

(Ogden) has filed a response.  Although the Court has scheduled oral argument on the

motion, after careful reflection on the evidence and testimony elicited at trial and the

parties' submissions, the Court now concludes that oral argument is wholly

unnecessary.`[2]

_____

     [1]  The Court notes that Defendant Kevin White has obviously elected not to file
either a renewed motion for judgment as a matter of law or a motion for new trial
pursuant to Rule 59 of the Federal Rules of Civil Procedure challenging either this
Court's legal determinations, the sufficiency of the evidence to support the jury's verdict,
or the fundamental fairness of his trial because the time for filing such motions has
expired.

     [2]  In contrast to the County's motion and memorandum of law, which Ogden's
counsel correctly points out disregards critical facts, otherwise distorts the record, and

The thrust of the County's argument for overturning the jury's verdict and directing judgment in its favor as a matter of law is twofold. First, the County argues, Defendant Kevin White (White) was not acting under color of state law for purposes of imposing liability under 42 U.S.C. § 1983. The County's second contention is that White was not a final policymaker such that his decision to terminate Ogden as his legislative aide could not visit legal liability on the County. Both contentions are wholly without merit in light of the overwhelming evidence and testimony introduced at trial which unquestionably established that White was indeed acting under color of state law and was most certainly the final policymaker with regard to the decision to terminate Ogden, a decision that was not subject to further meaningful review.

As to the County's first argument, which the Court notes is perfunctory in nature and wholly lacking in any meaningful citation to the record to support the argument, the record is replete with unrefuted evidence that White deprived Ogden of her constitutional right to be free from unlawful sex discrimination and sexual harassment during the period of her public employment with the County, together with a discriminatory motive or purpose on the part of White in terminating her employment. See Cross v. State of Alabama, 49 F.3d 1490, 1507 (11th Cir. 1995) (stating that appellees had a constitutional right to be free from unlawful sexual discrimination and sexual harassment in public

confuses the governing principles under § 1983, Ogden's response is correct, concise, and to the point with regard to the governing facts and law such that the Court adopts her arguments and incorporates them in this order in support of its decision to deny the County judgment as a matter of law.

employment but must prove discriminatory motive or purpose in order to establish a violation of the Equal Protection Clause) (citations omitted).  Ogden proved to the satisfaction of this Court, in support of its determination as a matter of law that White acted under color of state law, that White "used his authority as [Ogden's] boss on a daily basis to harass and humiliate her during and after work hours both at the work place and [County-] related functions[]" and "engaged in a pattern of unconstitutional behavior against [Ogden] while in the course of his official duties at the work place, and such unconstitutional activity continued, and in fact, escalated outside the workplace." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1307 (11th Cir. 2001).  Significantly, White himself conceded that the evidence supported the conclusion that Ogden established her entitlement to judgment as a matter of law on the issue of whether White was acting under color of state law when he sexually harassed and intimidated her and later terminated her employment for rebuffing his unwanted invitations to engage in an inappropriate sexual liaison with him.[3]  Consequently, in light of the record-based evidence, the County's argument wholly lacks merit.

      As to the County's second argument that White was not the final policymaker for purposes of imposing liability on the County for his act of terminating Ogden's employment, again, the County's argument is meritless.  The County, in its never ending quest to avoid liability with regard to this issue, continues to bury its head in the

------

      [3]  See docket 144, pages 263-67.

proverbial sand by ignoring the central piece of evidence which irrefutably and unequivocally establishes that White had the absolute and unqualified right to hire and terminate Ogden as his legislative aide without any meaningful review.  See Plaintiff's exhibit 24 (letter from Claire Saady, attorney for the County, to the Equal Employment Opportunity Commission in response to Ogden's complaint of discrimination under Title VII of the United States Code).

In the letter, the County's privately-retained attorney argued that the Equal Employment Opportunity Commission (the EEOC) did not have jurisdiction over Ogden's Title VII claim of sexual harassment/retaliation because she was not an employee within the meaning of the federal statute by virtue of the fact that she was not subject to the civil service law of Hillsborough County.[4]  To support that argument, the County's attorney made material representations of fact that White, as the appointing authority of Ogden as his legislative aide, "ha[d] the right to hire and fire without review[]" and that "it is clear that Commissioner White had *plenary* power of appointment and removal." (Emphasis added)  The Court reasonably assumes that the County's attorney chose her words carefully and understood the meaning of those words. In light of that assumption, the Court stresses that the definition of the word "plenary" means "absolute" and "unqualified."  See Webster's Third International Dictionary (1993).  Consequently, by its own admissions to an agency of the United States

---

[4]  See Plaintiff's trial exhibit 10.

-4-

Government, the County has conceded the "absolute" and "unqualified" right of White to appoint and remove Ogden as his legislative aide "without review."[5]

More troubling is the County's continued claim that, despite the representations made in this official document, it had in place a meaningful review process capable of overturning White's decision to terminate Ogden. This claim is completely undermined by the explicit testimony of Mr. Williams, the County's Director of Human Resources. After offering self-serving testimony on behalf of the County, he finally testified unequivocally in response to questions from the Court that he had no knowledge of what legal authority would have enabled the County to reverse the decision of White to terminate Ogden and that any procedure to investigate Ogden's claims of sexual discrimination at best would have been an *ad hoc* procedure.[6] Furthermore, as Ogden's attorney's written response so cogently observes, if the County's human resources department could have investigated any claim of sexual discrimination by Ogden against White, why did it not do so in the context of her complaint to the EEOC instead of taking the position that the EEOC had no jurisdiction because of White's plenary legal authority

---

[5]  The Court would note that the knowing and wilful making of any materially false, fictitious, or fraudulent statement or representation in any matter within the jurisdiction of the executive, legislative, or judicial branch of the United States Government constitutes a criminal offense pursuant to 18 U.S.C. § 1001. Cf. United States v. Milton, 8 F.3d 39, 45-6 (D.C. Cir. 1993) (upholding a conviction under § 1001 for making false statements to the Equal Employment Opportunity Commission with regard to the submission of false claim forms).

[6]  See docket 144, pages 241-42.

to terminate Ogden without review?[7]  Left unanswered by the County, therefore, is the question why, irrespective of its legal position that the EEOC had no jurisdiction to investigate Ogden's complaint, the County did not initiate its own *independent* investigation under the auspices of the procedures it now claims it had in place to investigate Ogden's claim of sexual discrimination and to stay the hand of White if it determined that claim was supported by the facts?  The answer is simple: the County had no such meaningful review process in place.

What is even more vexing to the Court, something it described as "ironically troubling" at a side-bar conference,[8] is the County's argument that Ogden did not avail herself of the opportunity to seek redress of her complaints against White even though she was advised through postings in her office of how she had the right to report discrimination to the EEOC.[9]  As the Court commented to the County's attorney at that side-bar conference: "Don't you find that troubling, ironically troubling, if she was to have followed that, well, she did follow it and you came back on behalf of the County and

---

[7]  One could also reasonably argue that the County is now estopped from claiming it had a meaningful review process in place given its written representations to the EEOC which clearly contradicts this claim.  As in the analogous case of <u>Browne v. City of Miami</u>, 948 So.2d 792, 794 (Fla. Dist. Ct. App. 2007), in which the court held that the city could not first take the position that the civil service board had no jurisdiction to review Browne's claim and then later take the contrary position in court that he did not exhaust his administrative remedies, "[t]he [County] cannot have it both ways."

[8]  <u>See</u> docket 144, pages 182-83.

[9]  <u>See</u> Defendant County's composite exhibit 7 (photographs of Ogden's work area).

said, no, you don't have rights under Title VII . . . Don't you see the irony? You're saying that she had all this information available to her, so she uses it and then you say, it's no good to you . . . I just find that rather troubling."[10]  In the face of this record, the County's argument that it should be relieved of liability because Ogden failed to report White's predatory acts of discrimination to the Human Resources Department is unworthy of consideration in light of the fact that when she did seek assistance from the EEOC under Title VII, something the County notified her she had a right to do through the postings in her office, the County literally slammed the proverbial door in her face by arguing to the EEOC that it had no jurisdiction to consider her complaint under Title VII.

Finally, the Court continues to be puzzled by the County's argument that because it was not the "moving force" behind White's predatory acts of discrimination resulting in Ogden's termination, it cannot be liable for the damages sustained by Ogden as a consequence of White's acts.  Eleventh Circuit precedent clearly establishes that "§ 1983 liability may be premised upon a single illegal act by a municipal officer only when the challenged act may fairly be said to represent official policy, such as when that municipal officer possesses final policymaking authority over the relevant subject matter."  Scala v. City of Winter Park, 116 F.3d 1396, 1397 (11th Cir. 1997).  However, before liability for a single illegal act of termination by a municipal official can be imposed on the municipal authority, a plaintiff must establish that the municipal officer was the final policymaker

---

[10]  See docket 144, pages 182-83.

with regard to the plaintiff's termination of employment, that is, the decision to terminate was not subject to meaningful administrative review.  See Maschmeir v. Scott, 269 Fed.Appx. 941, 943-45 (11th Cir. 2008) (unpublished) (canvassing area of Supreme Court and Eleventh Circuit precedent with regard to the law of final policymaking authority); Templeton v. Bessemer Water Serv., 154 Fed.Appx. 759, 764-66 (11th Cir. 2005) (unpublished) (same).

In this case, as discussed earlier in this order, there can be no question that White was indeed the final policymaker with regard to the decision to terminate Ogden's employment because there was a complete and total absence of any meaningful review of his decision.  As Ogden's attorney persuasively points out, the case of Martinez v. City of Opa-Locka, 971 F.2d 708 (11th Cir. 1992) is most on point and dictates a finding that White indeed was a final policymaker in the process of terminating Ogden's employment as his legislative aide.  Similar to the city manager in Martinez, White's decision to terminate Ogden from employment was insulated from further review by the Civil Service Board established by the County's Civil Service Act, as well as by any other individual or entity working within the confines of County government.  Consequently, because White, like the city manager in Martinez, had "absolute, discretionary authority" to terminate Ogden, "unconstrained by any policy other than that set by" him, his "termination of [Ogden] for [discriminatory] reasons subjects the [County] to § 1983 liability."  Martinez, 971 F.2d at 715.

Before closing, the Court deems it appropriate to observe that this case demonstrates that there is an entire class of County employees, that is, those who do not fall within the ambit of the County's Civil Service Act and serve at the pleasure of their appointing official, who have no administrative process available to them to contest and overturn a termination decision based on a discriminatory motive. Nor, as the County has made abundantly clear, do such employees have the right to seek redress from either the EEOC or to avail themselves of the remedies provided for under the provisions of Title VII. Instead, as this case has tragically revealed, at taxpayers' expense, these employees serve at the pleasure of their appointing official and are wholly unprotected from termination based on the unfettered whim and caprice of that official. Their only recourse is to seek redress in federal court under the auspices of § 1983, again at the potential expense of the taxpayers.

It is not, however, the function of this Court as a judicial officer to fill this glaring gap in the County's administrative process of reviewing employment practices infected with discriminatory motive and intent. That function is vested exclusively with the legislative branch of government. Hence, it is up to that branch of government to fill this gap.

**ACCORDINGLY**, for the reasons expressed, it is **ORDERED AND ADJUDGED** that the County's Motion for Judgment as a Matter of Law (Dkt. 138) is denied.

**DONE AND ORDERED** at Tampa, Florida, on September 14, 2009.

_____s/Richard A. Lazzara_____
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record

-10-